UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY MEIZIES, : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:21-cv-1041 (KAD) |
| : | |
| MICHELLE McDONALD, et al., : | |
| Defendants. : | |

**INITIAL REVIEW ORDER**

Plaintiff, Anthony Meizies ("Meizies"), a pretrial detainee currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 against Nurse Michelle McDonald and Lieutenant Jasmin, both employees of the Department of Correction.[1] He alleges that defendant McDonald was deliberately indifferent to his safety and that defendant Jasmin conspired to cover up defendant McDonald's deliberate indifference. He seeks damages from the defendants in their individual capacities and injunctive relief in their official capacities. The complaint was received on July 28, 2021 and Meizies' motion to proceed *in forma pauperis* was granted on August 25, 2021.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

---

[1] Although Meizies names only these two defendants in the case caption, he also includes APRN Caplan in the list of defendants in the body of the complaint. APRN Caplan is not mentioned in the factual allegations or any attached document. Thus, APRN Caplan is not considered a defendant in this case.

defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On January 17, 2021, Meizies was called to the medical unit. Doc. No. 1 ¶ 6. There was a slit in the back of the first chair in the first row in the waiting area. *Id.* ¶¶ 7-8. Meizies alleges that, although the slit would have been visible to medical and custody staff, the chair was not marked as broken. *Id.* ¶¶ 7-9. Meizies alleges that the chair was broken for at least 120 days, and possibly a year, but concedes there is no evidence to support this assertion. *Id.* ¶¶ 11-12/

Meizies sat in the broken chair. *Id.* ¶ 19. He looked around and saw Nurse McDonald speaking to another woman. *Id.* ¶¶ 24-25. Meizies sat back in the chair to wait to ask when he would be evaluated. *Id.* ¶ 27. The slit in the back of the chair opened catching the skin on his back. *Id.* ¶ 29. The pinch was painful and Meizies jerked forward and rolled off the chair onto his hands. *Id.* ¶¶ 30,32.

Nurse McDonald witnessed the fall and immediately assessed Meizies. *Id.* ¶¶ 33-35. In her medical report, Nurse McDonald did not say that the chair was marked. *Id.* ¶¶ 35-36 & Doc. No. 1 at 21. In the incident report, however, she noted that the chair was marked "do not sit." *Id.* ¶¶ 36-38 & Doc. No. 1 at 23.

On February 16, 2021, Lieutenant Jasmin confronted Meizies in the medical unit. *Id.* ¶¶ 39-40. The lieutenant told him to stop "his shenanigans" and threatened placement in segregation. *Id.* ¶¶ 40-42. Meizies alleges that, on the same day, Lieutenant Jasmin altered the video surveillance footage he had preserved by changing the disc number and filing an allegedly false and undated supplemental incident report.[2] *Id.* ¶¶ 42-44 & Doc. No. 1 at 24.

**Discussion**

Meizies alleges that the defendant McDonald was deliberately indifferent to his safety by permitting him to sit on a broken chair. He alleges that Lieutenant Jasmin threatened him, filed a false incident report, and altered the video surveillance tape to cover-up McDonald's deliberate indifference thereby committing a crime.

Records available on the Department of Correction website show that Meizies remains unsentenced. *See* ctinmateinfo.state.ct.us/detailsupv/asp?inmt_num=259221. Thus, the court considers his claims under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while claims of pretrial detainees are considered under the Fourteenth Amendment).

### Deliberate Indifference to Safety

To state a deliberate indifference claim under the Fourteenth Amendment, Meizies first

---

[2] The Supplemental Incident Report is dated January 25, 2021. Doc. No. 1 at 24.

3

must allege facts showing that the challenged condition "pose[d] an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Meizies also must show that "the defendant-official acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Under the first part of the deliberate indifference test, a condition is objectively serious if it "pose[s] an unreasonable risk of serious damage to [a prisoner's] future health." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2001) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Thus, the first component measures risk based on "the seriousness of the [potential] injury." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). Here, the risk creating condition is the broken chair. Meizies alleges that the split in the chair pinched the skin on his back. In response to pain from the pinch, he jerked away and fell to the floor on his hands. Meizies identifies no lasting injuries suffered from the pinch or resulting fall and, in describing the pinch to Nurse McDonald, compared the pinch to a bee sting. Thus, Meizies has not alleged facts supporting the first element of the deliberate indifference test, i.e. that the chair presented a sufficiently serious risk of harm so as to trigger an obligation on the part of the defendant to act.

Nor has Meizies alleged facts showing that Nurse McDonald acted intentionally or recklessly failed to act with reasonable care to mitigate whatever identifiable risk the chair may have posed. Meizies alleges (contradictorily) that the split in the chair back was visible to all who entered the medical unit but was not visible to him. But even if the split was visible, Meizies alleges no facts suggesting that Nurse McDonald was aware that the split could pinch Meizies' back or cause him to tumble from the chair in reaction. Thus, any inaction by McDonald, in not marking or removing the chair, (assuming she even had such a duty) constitutes, at most, negligence and is not cognizable under section 1983. All claims against Nurse McDonald are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Conspiracy**

Meizies also alleges that the defendants conspired to falsify their reports and alter the video surveillance footage. Under the intracorporate conspiracy doctrine, the officers, employees and agents of a single corporate entity are legally incapable of conspiring together because they are not considered separate persons under the law. *See Girard v. 94th Street and Fifth Avenue Corp.,* 530 F.2d 66, 72 (2d Cir. 1976) (affirming application of intracorporate conspiracy doctrine in conspiracy claim under 42 U.S.C. § 1985); *Federal Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018)(noting same).

Although the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, district courts within the Second Circuit have consistently applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners. *See, e.g., Germano v. Cook,* 2021 WL 2810170 *3 (D. Conn. July 6, 2021); *Schlosser v. Walker*, 3:20-cv-433(WIG), 2020 WL 7324679, at *3-4 (D. Conn. Dec. 11, 2020);

*Jones v. Wagner*, No. 3:20-cv-475(VAB), 2020 WL 4272002, at *5 (D. Conn. July 24, 2020); *Edwards v. Annucci*, No. 17 CV 5018(VB), 2019 WL 1284295, at *9-10 (S.D.N.Y. Mar. 20, 2019).

An exception to the intracorporate conspiracy doctrine is shown if the plaintiff can demonstrate that the defendants were "pursuing personal interests wholly separate and apart from the entity" for whom they work *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted).  A mere allegation that the defendants had personal bias against the plaintiff, however, is insufficient to satisfy the exception.  *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding that prisoner must do more than allege that defendants were motivated by personal bias against him to show that defendants were pursuing personal interests wholly separate and apart from the entity); *see also Harris v. City of Newburgh*, 2017 WL 4334141, at *8 (S.D.N.Y. Sept. 17, 2017) (for exception to apply, plaintiff must plausibly allege that defendants "acted other than in the normal course of their corporate duties").  Meizies alleges no facts suggesting the defendants were acting other than in the course of their duties.  Thus, the exception does not apply and the conspiracy claim must be dismissed.

**Threats**

Meizies alleges that Lieutenant Jasmin threatened to place him in segregation if he did not stop his "shenanigans."  "[A]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless whether the inmate is a pretrial detainee or sentenced prisoner."  *Ruffino v. Murphy*, No. 3:09-cv-1287(VLB), 2010 WL 1444562, at *4 (D. Conn. Apr. 12, 2010).  *See also Carziglio v. Abrams*, No. 18-CV-4198(NSR), 2020 WL 805630, at *5 (S.D.N.Y. Feb. 25, 2020) ("It is well-settled that pre-trial detainees do

6

not have cognizable § 1983 claims based on allegations of verbal harassment and/or abuse.") (citing cases).

A singular threat with no subsequent action is insufficient to state a cognizable section 1983 claim. Any claim against Lieutenant Jasmin based on the threat is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Falsified Documents**

Finally, Meizies contends that the defendants violated state criminal laws by falsifying the incident reports and altering video surveillance footage. Meizies' claims are wholly conclusory. He alleges without support that reports were backdated. In addition, much of his claim is based on the fact that the medical report, signed at 10:06 a.m., which is intended to relate facts important for diagnosis and treatment, does not state that the chair had a sign on it, and the incident report, dated nine minutes later, does state that the chair had a sign. Doc. No. 1 at 21-23.

But Meizies has no constitutional right to accurate prison records. *See Houston v. Sheahan*, No. 13-CV-6594-FPG, 2017 WL 3425271, at *5 (W.D.N.Y. Aug. 9. 2017) (other than alterations to prior criminal history or disciplinary records which could be relied upon in "a constitutionally significant manner," prisoner had no constitutional right to be free from false information in prison records). Here, Meizies suffered no disciplinary consequences as a result of the purportedly inaccurate incident report. Thus, the allegedly falsified report does not support a cognizable claim.

Nor can he assert claims in this action for perceived violations of state criminal laws. *See Hansel v. Brazell*, 85 F. App'x 237, 238 (2d Cir. 2004) (summary order) (dismissing section

1983 claim for violation of state criminal laws because violation of state law cannot support a section 1983 claim) (citing *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

**Orders**

The complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 31st day of August 2021 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge